1 | SANDRA R. BROWN
Acting United States Attorney
2 | LAWRENCE S. MIDDLETON
Assistant United States Attorney
3 | Chief, Criminal Division
KAREN I. MEYER (Cal. Bar No. 220554)
4 | Assistant United States Attorney
Violent and Organized Crime Section
5 |      1300 United States Courthouse
       312 North Spring Street
6 |      Los Angeles, California 90012
       Telephone: (213) 894-8559
7 |      Facsimile: (213) 894-3713
       E-mail:   kim.meyer@usdoj.gov
8 |
Attorneys for Plaintiff
9 | UNITED STATES OF AMERICA

10 |              UNITED STATES DISTRICT COURT

11 |          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12 | UNITED STATES OF AMERICA,          No. CR 15-662-ODW-12

13 |           Plaintiff,              GOVERNMENT'S RESPONSE TO DEFENDANT
                                      LUIS KRUEGER'S OBJECTIONS TO
14 |             v.                    PRESENTENCE INVESTIGATION REPORT
                                      AND POSITION RE: SENTENCING
15 | TU CHAU LU,  et al.,

16 |           Defendants.            Sentencing
                                      Date and Time:  August 16, 2017
17 |                                                   11:00 a.m.

18 |                                   Location:       Courtroom of the
                                                      Hon. Otis D.
19 |                                                   Wright

20 |

21 |      Plaintiff United States of America, by and through its counsel

22 | of record, the United States Attorney for the Central District of

23 | California and Assistant United States Attorney Karen I. Meyer and

24 | United States Department of Justice Trial Attorney Andrew Creighton,

25 | hereby files its Response to Defendant Luis Krueger's Objections to

26 | Presentence Investigation Report and Position Re: Sentencing (CR

27 | 324).

28 |      This response is based upon the attached memorandum of points

1  and authorities, the files and records in this case, and such further

2  evidence and argument as the Court may permit.

3   Dated: August 3, 2017          Respectfully submitted,

4                                  SANDRA R. BROWN
                                   Acting United States Attorney
5
                                   LAWRENCE S. MIDDLETON
6                                  Assistant United States Attorney
                                   Chief, Criminal Division
7

8          _____/s/_____
                                   KAREN I. MEYER
9                                  Assistant United States Attorney

10                                 ANDREW L. CREIGHTON
                                   Trial Attorney
11                                 United States Department of Justice

12                                 Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

I.   BACKGROUND

3

A.   <u>Facts and Offense Conduct</u>

4

From an unknown date until December 6, 2010, defendant conspired

5

with co-defendants Tu Chau Lu ("Lu"), Tsung Wen Hung ("Hung"), Edward

6

Kim ("Kim"), and John Edmundson ("Edmundson") to provide cashier's

7

checks in exchange for cash that defendant believed was the proceeds

8

of unlawful activity.[1]   (PSR ¶ 29.)   Almost three weeks prior to the

9

money laundering deal that took place on December 6, 2010, on

10

November 16, 2010, co-defendant Hung met with CS1 and an undercover

11

agent at the Wynn Hotel in Las Vegas, Nevada, and agreed to launder

12

about $200,000 to $250,000 of CS1's cash.   (PSR ¶ 31.)   The next day,

13

on November 17, 2010, defendant and co-defendant Edmundson opened a

14

joint personal checking account at Saigon National Bank ("SNB"), the

15

account that defendant used to launder $200,000 in cash on December

16

6, 2010.   (PSR ¶¶ 32, 34.)

17

On December 6, 2010, defendant met co-defendants Hung and Kim at

18

a Taco Bell restaurant in Westminster, California, to discuss the

19

$200,000 money laundering transaction.   (PSR ¶ 34.)   Afterward,

20

co-defendant Hung met CS1 in SNB's parking lot, took $20,000 from CS1

21

as the money laundering fee, looked at the $200,000 in cash, and then

22

walked toward SNB with CS1, where they met defendant.   (PSR ¶ 34.)

23

All three entered the bank, but defendant told co-defendant Hung and

24

CS1 to wait in the bank lobby while he alone went to the merchant

25

26

[1] The PSR makes reference to the involvement of Li Jessica Wei
in the conspiracy.  The government notes that, on government motion,

27

the Court dismissed the indictment against Ms. Wei on April 15, 2016,
with prejudice.  (CR 242, 244.)  Accordingly, paragraph 23 should be

28

struck and references to Ms. Wei in paragraphs 28 and 28(e) should be
omitted.

teller window with the $200,000 in cash.  (PSR ¶ 34.)  At the merchant window, defendant presented a false invoice stating that the $200,000 was for a December 1, 2010 purchase of tourmaline gemstones from Nigeria from Amina Gold and Gems.  (PSR ¶ 34.)  Defendant returned to the lobby and gave CS1 two $100,000 cashier's checks, each made out to "United Business Associates," the name given by CS1 to be used on the cashier's checks.  (PSR ¶¶ 33, 34.)

On May 9, 2017, defendant pled guilty pursuant to a plea agreement to Count 2 of a 28-count Indictment,[2] which charged a violation of 18 U.S.C. § 1956(h), Money Laundering Conspiracy.

    B.   <u>USPO Guideline Calculation</u>

The United States Probation Office ("USPO") prepared a Pre-Sentence Report and Recommendation ("PSR") calculating a criminal history category of I and adjusted total offense level of 17.  (PSR ¶¶ 53, 59.)  The USPO calculated the adjusted total offense level based on a base offense level of 18, (U.S.S.G. § 2S1.1(a)(2); U.S.S.G. § 2B1.1(b)(1)(F)), plus two levels for a conviction under 18 U.S.C. § 1956, (U.S.S.G. § 2S1.1(b)(2)(B)), and minus three points for acceptance of responsibility, U.S.S.G. § 3E1.1(b).  (PSR ¶¶ 42-53.)  The adjusted total offense level and criminal history category calculated by the USPO resulted in a sentencing range of 24 to 30 months.  (PSR, Guideline Summary.)

    C.   <u>Response to Defendant's Factual Objections to the PSR</u>

Defendant raises four factual objections to the PSR.

---

[2] Defendant was charged in only one other count in the indictment – Count 22.

1                    **1.   Bankruptcy Filings**

2        Defendant objects to those portions of the PSR where it states

3   that he has filed two Chapter 13 bankruptcy petitions, one in May

4   2013, the other in October 2013.  (PSR ¶ 107(e), (f).)  The

5   government has no independent information regarding these bankruptcy

6   petitions.  Government counsel sought to contact the probation

7   officer on August 2, 2017, but learned that the officer is out of the

8   office until August 8, 2017.  To the extent necessary, government

9   counsel may file a supplemental pleading regarding any additional

10  information government counsel receives from the probation officer

11  about these bankruptcy filings.

12                   **2.   Business Affiliations**

13       Defendant objects to the PSR's statement that he is associated

14  with the following business entities:  USA Capital Hungers, LLC; Eden

15  Energy Associates; Igit Investments; and Valencia 13, LLC.  (PSR

16  ¶ 107(g).)  The government has no independent information regarding

17  these business affiliations, and will seek to obtain additional

18  information from the probation officer upon her return to the office.

19                   **3.   Chase Mortgage Debt**

20       Defendant objects to the PSR's statement that he owes $234,784

21  to Chase Mortgage, $53,101 of which is past due.  The government has

22  no independent information regarding this debt, and will seek to

23  obtain additional information from the probation officer upon her

24  return to the office.

25       D.    **Response to Defendant's Objection to the USPO
              Guidelines Calculation**

26

27

28                                  3

1    Defendant seeks under U.S.S.G. § 3B1.2(b) a two-level downward

2 adjustment in offense level for minor role. (Deft.'s Pos. at 3, 6,

3 and 8.) Defendant justifies this adjustment by claiming that he did

4 not understand the scope and structure of the RICO conspiracy and did

5 not receive any personal benefit. (Deft.'s Pos. at 6, 8.) In making

6 this claim, however, defendant is referencing his understanding of an

7 offense with which he was not charged in an attempt to minimize his

8 understanding of the criminal activity to which he actually pleaded

9 guilty – namely, the money laundering conspiracy as set forth in

10 Count 2 that resulted in the laundering of over $450,000 over the

11 course of two months in December 2010 and January 2011. Defendant's

12 understanding and influence over that criminal activity was

13 considerable:  on November 17, 2010, defendant opened an account at

14 SNB with co-defendant Edmundson that was used two and a half weeks

15 later for the money laundering transaction on December 6, 2010; on

16 that date, December 6, 2010, defendant accepted $200,000 in cash from

17 CS1, took the cash to a merchant teller while he asked his co-

18 conspirator and CS1 to wait in the lobby; provided the teller with an

19 invoice he knew to be false stating that the $200,000 was the result

20 of a purchase of tourmaline gemstones from Nigeria; and obtained two

21 $100,000 cashier's checks that he then provided to CS1. (Plea

22 Agreement, CR 295, at 7-9.) While the government has no evidence as

23 to whether defendant was paid for his involvement in the transaction,

24 even if he was not paid, the facts set forth above demonstrate that

25 defendant exerted both decision-making authority and influence over

26 how the transaction was conducted.  Defendant is not substantially

27 less culpable than the average participant in the conspiracy.

28

4

E.   <u>Response to Defendant's Objection to the Imposition of a</u>
     <u>$5,000 Fine</u>

Defendant objects to the imposition of a $5,000 fine as
recommended by the probation officer, stating "[defendant's] lack of
economic strength has clearly been demonstrated."  (Deft.'s Pos.
at 4.)  In fact, what has been demonstrated is the opposite.
Defendant owns a 2,400 square foot home in Malibu valued at
$2,000,000 "in a residential area near the Getty Villa . . . [where]
the back of the house has a view of the Pacific Ocean and the house
is furnished with what appears to be upscale furniture."  (PSR
¶¶ 76, 77.)  He owns 160 acres of land in Needles, California, (PSR
¶ 99), has engaged in the purchase and sale for a profit of a parcel
of property in Dana Point, California, (PSR ¶ 107(b)), and in 2005,
acquired an interest in vacant land in San Bernardino County. (PSR
¶ 107(d).)  And if defendant is to be believed, he did not file
bankruptcy in either May or October 2013, and does not owe a $234,784
debt to Chase Mortgage.  (Deft.'s Factual Objections 1, 2 and 4.)  It
is unclear whether defendant has additional assets, as he did not
"provide all of the requested financial documentation including
documents relating to a trust which he set up with respect to his
residence after his indictment in the instant offense," (PSR ¶ 101),
nor did he report any anticipated assets, "[t]herefore, it is unknown
whether he has already inherited assets from his late father's
estate, if any."[3]  ((PSR ¶ 102.)  Even with this incomplete financial
picture, what is clear is that defendant can afford a $5,000 fine.

---

[3] Defendant's stepfather died in late 2016.  (Probation
Recommendation Letter, at 4.)

5

II.   GOVERNMENT SENTENCING RECOMMENDATION

Pursuant to Title 18, United States Code, Section 3553(a), the Court must impose a sentence sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes by the defendant, and provide the defendant with correctional treatment.  The government concurs in the recommendation of the USPO that defendant be sentenced to 24 months imprisonment.  Defendant seeks to avoid incarceration entirely, and is asking for a sentence of home detention.  (Deft.'s Pos. at 2.) But an analysis of the § 3553(a) factors establishes that a sentence of home detention would be insufficient to satisfy the goals of sentencing.  The government therefore recommends that defendant be sentenced to a custodial term of 24 months and a three-year period of supervised release.

A.   The Court Must Properly Calculate the Guidelines

The Court must correctly calculate the guidelines range and use it as "the starting point and the initial benchmark."  See United States v. Henderson, 649 F.3d 955, 964 (9th Cir. 2011) (citing Gall v. United States, 552 U.S. 38, 49 (2007)).  As noted above, the government does not believe that a minor role adjustment is warranted, and that the proper guideline range is that set forth in the plea agreement and the PSR.

B.   Section 3553(a) Factors

After properly calculating the Guidelines range and using it as the court's "initial benchmark," "[s]entencing courts must also continue to consider all of the § 3553(a) factors in deciding upon

the sentence." Henderson, 649 F.3d at 964.  The requirement to consider the § 3553(a) factors "does not necessitate a specific articulation of each factor separately, but rather a showing that the district court considered the statutorily-designated factors in imposing a sentence." United States v. Nichols, 464 F.3d 1117, 1125 (9th Cir. 2006) (quoting United States v. Knows His Gun, 438 F.3d 913, 918 (9th Cir. 2006)).  The following statutory factors are of significance in this case.

> 1.   Nature and Circumstances of the Offense and History and Characteristics of the Defendant

In his letter to the Court, defendant expresses remorse for committing "such an ignorant act . . . ." (Deft.'s Pos., CR 324-1.) There was nothing "ignorant" about this act.  Defendant completed this transaction – using an account that he had opened a mere two and a half weeks earlier - under the guise of a gemstone deal that he knew to be false, and he did so by presenting a fake invoice to the merchant teller in order to mask the true source of the funds.  (See fake invoice, attached hereto as Ex. A.)  Notwithstanding this flagrant falsehood, which could justify a sentence at the high end of the guideline range, in light of defendant's role as his mother's caretaker, the government concurs in the 24-month custodial sentence recommended by the probation officer.[4]

---

[4] The government notes that defendant need not be his mother's sole caretaker, as defendant contends (Deft.'s Pos. at 4.).  As the probation officer noted, "other family members are available to provide at least part-time care, including Krueger's sister or Krueger's adult daughter."  (Probation Recommendation Letter, at 6.) The probation officer also noted that "it appears that his mother has independent financial resources." Id.  See also Probation Recommendation Letter, at 5 ("When [defendant] travels for work (up

7

2.   **The Need for the Sentence to Provide Just Punishment,
Adequate Deterrence, and Correctional Treatment**

The Court must consider statutory factors laid out in Title 18,
United States Code, Section 3553(a)(2), including the need to provide
just punishment, afford adequate deterrence, and provide needed
correctional treatment.  Tapia v. United States, 564 U.S. 319, 325
(2011).  While defendant has asked for home detention, such a
sentence fails to account for the seriousness and deliberateness of
defendant's conduct and hence to provide just punishment and adequate
deterrence.  The seriousness of the crime of conspiracy, and
conspiracy to commit money laundering, should not be doubted.  United
States v. Recio, 537 U.S. 270, 275 (2003) ("[C]onspiracy poses a
threat to the public over and above the threat of the commission of
the relevant substantive crime—both because the combination in crime
makes more likely the commission of other crimes and because it
decreases the probability that the individuals involved will depart
from their path of criminality.") (internal quotation marks and
citations omitted)).  Defendant's conduct in bringing this
transaction that was conceived by him and his co-participants to
completion by using his own joint account with co-defendant Edmundson
and concealing it behind the veil of a fake gemstone transaction

_____

to four days at a time), he prepares her meals before hand and
arranges for her to stay with her sister, or for her sister to stay
with his mother at his home.  In turn, Krueger's mother sold her
home, moved into his home, and helps him by contributing financially
to his household expenses."

Nor does the government credit defendant's claim in his letter
to the Court that if he is incarcerated for two years, he would lose
his house and his mother would have no place to live.  As noted in
the PSR, "[p]rior to 2016, [defendant] was unemployed for eight years
and supported himself with his savings and assistance from his
mother.  He has acted as a caregiver for his mother for five years
and in turn his mother assists with household expenses."  (PSR ¶ 95.)

8

illustrates the threat.  The 24-month term of incarceration recommended by the probation officer, and with which the government concurs, properly accounts for the factors enumerated in § 3553(a)(2).

III. CONCLUSION

The government concurs with the sentencing recommendation of the USPO, and thus recommends a custodial sentence of 24 months, followed by a three-year period of supervised release, a $5,000 fine, and a $100 special assessment.